******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DEEPALI RAY *v.* SURAJIT D. RAY
## (AC 38865)

Keller, Mullins and Norcott, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the judgment of the trial court
granting the defendant's postjudgment motion for an order establishing
his child support obligation in accordance with the child support and
arrearage guidelines, as set forth in the applicable state regulations
(§ 46b-215a-1 et seq.), and from the court's denial of the relief that she
had requested in her motion to reargue that ruling. The defendant sought
the order when, pursuant to the dissolution judgment, his unallocated
alimony and child support obligation had terminated. At the hearing on
the motion for order, the parties presented evidence and testimony
regarding their respective incomes. The defendant testified that he
received deferred compensation in addition to his base salary, but that
the amount of such compensation was indeterminate. A child support
guidelines worksheet prepared by a family relations officer also was
submitted to the trial court. Following the hearing, the trial court granted
the defendant's motion and ordered him to pay $288 in child support,
which was the presumptive minimum amount pursuant to the schedule
in the child support guidelines for parties whose combined net weekly
income exceeded $4000. The court also declined to enter a supplemental
child support order based on a percentage of the defendant's deferred
compensation income as the plaintiff had requested. Thereafter, the trial
court granted the plaintiff's motion to reargue but denied the relief
requested therein, and this appeal followed. *Held*:

1. Contrary to the defendant's assertion that the plaintiff had failed to provide
   a record that was adequate for review by failing to comply with the
   applicable rules of practice (§§ 64-1 and 67-4), the plaintiff's claims were
   reviewable on appeal; the record included the transcripts of the relevant
   hearings, and this court was able to readily identify those portions of
   the transcripts that encompassed the trial court's factual and legal find-
   ings with respect to its rulings and to discern the evidentiary basis, or
   lack thereof, for the arguments advanced by the parties.

2. The plaintiff could not prevail on her claim that the trial court erred by
   entering an order establishing the defendant's child support obligation
   without making a finding as to his net income; the record indicated
   that, in determining the defendant's child support obligation, the trial
   court had before it the parties' financial affidavits and other evidence
   as to their net incomes, that the court specifically stated that it had
   taken all of the evidence presented into account in fashioning its child
   support order, and that it stated, referencing the child support guidelines
   worksheet, the amounts of the parties' gross and net incomes that
   justified its order.

3. This court declined to review the plaintiff's claim that the trial court, in
   making its findings, improperly relied on an unsworn child support
   guidelines worksheet that contained information that was contrary to
   the gross and net incomes set forth in the parties' financial affidavits
   or testified to by the parties, the plaintiff having failed to properly
   preserve her claim for appeal: the plaintiff did not object to the submis-
   sion of the guidelines worksheet during the hearings on the parties'
   respective motions or to the trial court's consideration of it on the
   grounds asserted on appeal, and the plaintiff's motion to reargue did
   not refer to the guidelines worksheet; moreover, the plaintiff's counsel
   admitted during the hearing on the motion to reargue that the guidelines
   worksheet was based on the defendant's financial affidavit, which
   directly contradicted the plaintiff's claim on appeal.

4. The plaintiff could not prevail on her claim that the trial court improperly
   failed to take into account the defendant's income in excess of his base
   salary in determining his child support obligation, and, therefore, that
   its child support order did not comply with the child support guidelines:
   there was no indication in the record that the trial court did not consider

the evidence regarding the defendant's deferred compensation income, as it specifically stated during the hearings on the parties' respective motions that it had considered all of the relevant evidence and testimony in making its order, and even if it had been provided with sufficient evidence to assign a predictable amount to the defendant's bonus income, it nevertheless had the discretion to order only the presumptive minimum child support amount and to decline to enter any supplemental order given that the parties' combined net weekly base salaries were in excess of $4000 per week; moreover, the court properly exercised its discretion by ordering the presumptive minimum amount of child support under the child support guidelines and declining to enter a supplemental order given the high incomes of the parties, the lack of any evidence as to any specialized or particular financial needs of the parties' minor child, that other unmodified portions of the dissolution decree addressed payment for many additional expenses related to the child, and that the plaintiff presented little evidence to justify a higher amount or to show that the presumptive minimum amount would be inappropriate or inequitable, thereby requiring the application of the deviation criteria in the guidelines.

5. The trial court did not abuse its discretion in denying the relief requested by the plaintiff in her motion to reargue; the plaintiff's counsel essentially argued at the hearing on the motion to reargue that the facts surrounding the defendant's income had not clearly been presented to the court, which was an improper use of a motion to reargue, as the plaintiff did not present any evidence that the court had misapprehended or that could not have been discovered earlier and presented during the hearing on the defendant's motion for order, and she did not request that the court consider any overlooked legal authority or claim.

Argued May 22—officially released October 31, 2017

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Shay, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Jacobs, J.*, granted the defendant's motion for order and issued an order regarding child support; subsequently, the court, *Jacobs, J.*, granted the plaintiff's motion to reargue but denied the relief requested therein, and the plaintiff appealed to this court. *Affirmed.*

*Joseph T. O'Connor*, for the appellant (plaintiff).

*Sarah E. Murray*, with whom, on the brief, was *Caitlin R. Trow*, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, Deepali Ray, appeals from the judgment of the trial court granting the postjudgment motion brought by the defendant, Surajit D. Ray, for an order establishing his child support obligation to the plaintiff in accordance with the state's child support and arrearage guidelines (guidelines), Regs. Conn. State Agencies § 46b-215a-1 et seq. The plaintiff also appeals from the judgment of the trial court, rendered after argument, denying the relief requested in her postjudgment motion for reargument and reconsideration. The defendant sought an order establishing his child support obligation when, pursuant to the judgment of dissolution rendered on August 11, 2008, his unallocated alimony and child support obligation had terminated. On appeal, the plaintiff claims that the court erred by (1) establishing the defendant's child support obligation without making a finding as to his net income, (2) making findings as to the parties' gross and net incomes based upon an unsworn child support guidelines worksheet (guidelines worksheet) prepared by a family relations officer where the information on the guidelines worksheet was contrary to the evidence, and (3) failing to take into account the defendant's income in excess of his base salary when it determined his child support obligation. We affirm the judgment of the trial court.

The following facts, as found by the trial court or apparent from the record, and procedural history are pertinent to our consideration of this appeal. The parties were married on June 26, 1994, and they have one minor child who was born on September 1, 2005. At the time of the dissolution, the plaintiff was thirty-nine years old and in good health. She has a masters degree in business administration and was employed as a financial manager at Starwood Hotels and Resorts, earning a base salary of $92,000 per year. She also was eligible for bonuses. The defendant was thirty-six years old and also in good health. He was employed as an executive director at Morgan Stanley, earning a base salary of $150,000 per year. He too was eligible for bonuses. Following a trial, the court, *Shay, J.* dissolved the parties' marriage and made a finding "[t]hat taking into consideration the factors set forth in General Statutes § 46b-82, including the age, education, earnings and work experience of the [plaintiff], in light of the facts and circumstances of this case, a time limited award of alimony is appropriate." The dissolution court also made a finding "[t]hat the combined net weekly income of the parties is $3145; that basic child support is $418 per week; and that the [defendant's] share is $255 per week . . . ."

The court further ordered that in the event that the alimony should terminate for whatever reason and the child was still a minor, commencing with the first day of the first month following such termination, and monthly

thereafter, the defendant would pay to the plaintiff a sum consistent with the then existing guidelines, or as the court may otherwise direct, as child support until such time as the child reached the age of eighteen years. In the event, however, that the child turns eighteen years old and is still in high school, pursuant to General Statutes § 46b-84 (b), the child support order shall continue until the first day of the next month following the child's graduation from high school or his nineteenth birthday, whichever occurs first.

The court also ordered that the child's extracurricular expenses, including summer camp and day care expenses, would be shared by the parties equally. The plaintiff was ordered to maintain and pay for health insurance for the child, so long as it is available to her through her employment at a reasonable cost. In the event that such insurance is unavailable to the plaintiff, the defendant was ordered to "obtain and maintain health insurance for the . . . child at his expense, so long as he shall be obligated to pay child support [or subject to] an educational support order pursuant to General Statutes § 46b-56c, or an order based upon a written agreement of the parties for postmajority educational support." The dissolution judgment incorporated the agreement of the parties that all unreimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the child would be shared by the parties equally. The dissolution court also reserved jurisdiction to enter an educational support order pursuant to § 46b-56c.

Shortly after it rendered its judgment dissolving the marriage, the dissolution court issued an amendment and corrections to its memorandum of decision that amended its original order of unallocated alimony and child support. The dissolution court deviated from the guidelines and entered financial orders providing that the defendant was to pay to the plaintiff $3125 per month as unallocated alimony and child support until the death of either party, the remarriage of the plaintiff, or August 31, 2015, whichever occurred first. In addition, commencing September 1, 2008, for so long as the defendant had an outstanding alimony obligation to the plaintiff, within two weeks after receipt by the defendant of any gross additional cash compensation from his employment, including, but not limited to, any salary, bonus or incentive pay in excess of his base salary of $150,000, the defendant was to pay to the plaintiff 25 percent of such gross additional cash compensation up to and including the first $200,000 per year of such additional compensation, as additional periodic unallocated alimony and child support, until the death of either party, the remarriage of the plaintiff, or August 31, 2015, whichever occurred first.

On September 4, 2015, the defendant filed a postjudgment motion for order requesting that the court enter

an order establishing his child support obligation in accordance with the guidelines, as the plaintiff's alimony had terminated on August 31, 2015.

On October 19, 2015, the court held a hearing on the defendant's motion. At the hearing, both parties presented evidence and testimony regarding their respective incomes, and during the hearing, the guidelines worksheet prepared by a family relations officer was submitted to the court after it noted that it had not been provided with one. The guidelines worksheet reflected a combined net weekly income of $6000 using the parties' base salaries and allowing for permitted deductions.

The defendant requested that the court enter an order of $288 weekly, which was the amount suggested on the guidelines worksheet. The plaintiff submitted into evidence her own child support calculations. The plaintiff requested, on the basis of her calculations, that the trial court order the defendant to pay her child support in the amount of $895 per week, or $3878 per month, and that the court "consider the . . . [defendant's] deferred compensation . . . [a]nd include [it] in providing an order."

The court, after stating that it had considered all of the evidence, including the testimony of the parties, the exhibits, the parties' financial affidavits, and guidelines, ordered the defendant to pay the requisite presumptive minimum child support in the amount of $288, in accordance with the guidelines.[1] The court did not issue any supplemental child support order based on the deferred compensation the defendant receives in addition to his base salary.

On November 3, 2015, the plaintiff filed a motion for reargument or reconsideration postjudgment (motion to reargue). The court granted the plaintiff's motion and held a hearing on January 20, 2016. Following argument by counsel for both parties, the court denied the plaintiff the relief she requested and determined that its decision of October 19, 2015, would stand, reiterating that it had "considered the . . . guidelines, the statutory factors of criteria . . . [and] all the evidence that was presented, including the financial affidavits and their attachments." This appeal followed.[2] Additional facts and procedural history will be set forth as necessary.

We begin with the well established standard of review relative to domestic relations cases. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . [T]o conclude that

the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Valentine* v. *Valentine*, 164 Conn. App. 354, 361, 141 A.3d 884, cert. denied, 321 Conn. 917, 136 A.3d 1275 (2016).

In *Fox* v. *Fox*, 152 Conn. App. 611, 619 n.3, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014), we applied the abuse of discretion standard to our review of a modification of a child support order, reasoning that the claims at issue "challenge the manner in which the court applied the guidelines, not the applicability of the guidelines or the extent thereof" and that "[t]he parties do not dispute that the guidelines governed the court's decision on the plaintiff's motion to modify child support." In the present case, the challenge on appeal is the manner in which the trial court applied the guidelines.[3]

## I

Before we address the plaintiff's claims, we must consider the defendant's assertion that the plaintiff has failed to provide an adequate record for review by failing to comply with Practice Book § 64-1 and by failing to support the arguments in her appellate brief with appropriate citations to the record.

First, the defendant argues that the plaintiff failed to comply with Practice Book § 64-1 (a), thereby rendering the record inadequate for review. "If an oral decision is rendered, a signed transcript of the oral decision should be created and filed for use in any appeal. If the court fails to file an oral or written decision, the appellant, who has the duty to provide an adequate record for appellate review; see Practice Book § 61-10; must file a notice to that effect with the appellate clerk in accordance with Practice Book § 64-1 (b)." *Gordon* v. *Gordon*, 148 Conn. App. 59, 66–67, 84 A.3d 923 (2014). In the present case, the court did not file a written memorandum of decision explaining its ruling, nor did it prepare and sign a transcript of its oral ruling as required by Practice Book § 64-1 (a). The plaintiff did not file a motion pursuant to Practice Book § 64-1 (b) providing notice that the court had not filed a written decision or a signed transcript of its oral decision, nor did the plaintiff take any additional steps to obtain a decision in compliance with Practice Book § 64-1 (a).

"When the record does not contain either a memoran-

dum of decision or transcribed copy of an oral decision signed by the trial court stating the reasons for its decision, this court frequently has declined to review the claims on appeal because the appellant has failed to provide the court with an adequate record for review. . . . Moreover, [t]he requirements of Practice Book § 64-1 are not met simply by filing with the appellate clerk a transcript of the entire trial court proceedings. . . . Despite an appellant's failure to satisfy the requirements of Practice Book § 64-1, this court has, on occasion, reviewed claims of error in light of an unsigned transcript as long as the transcript contains a sufficiently detailed and concise statement of the trial court's findings." (Citations omitted; internal quotation marks omitted.) *Stechel* v. *Foster*, 125 Conn. App. 441, 445, 8 A.3d 545 (2010), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011); see also *State* v. *Brunette*, 92 Conn. App. 440, 446, 886 A.2d 427 (2005), cert. denied, 277 Conn. 902, 891 A.2d 2 (2006).

Although we do not countenance this violation of our rules of practice, we are not persuaded that the plaintiff's failure to perfect the record as required by Practice Book § 64-1 in the present case is fatal to her appeal because the record before us includes the transcripts of the court hearings and we can readily identify those portions of the transcripts that encompass the court's factual and legal findings with respect to the defendant's motion for order and the plaintiff's motion to reargue.

The defendant also argues that the plaintiff "runs afoul" of Practice Book § 67-4 (c), which provides, in relevant part, that the statement of the nature of the proceedings and of the facts of the case in the appellant's brief "shall be supported by appropriate references to the page or pages of the transcript or to the document upon which the party relies . . . ." The defendant also asserts that the argument section of the plaintiff's brief does not to comply with Practice Book § 67-4 (d) because, as required by this rule, it fails to include "appropriate references to the statement of facts or to the page or pages of the transcript or to the relevant document upon which the [plaintiff] relies . . . ." In his brief, the defendant describes, in detail, a multitude of factual assertions by the plaintiff that he claims are either unaccompanied by any citation to the record, or are accompanied by citations to the record that do not support her contentions. The defendant claims that insofar as the plaintiff's factual assertions and arguments remain unsupported by appropriate citations to the record, they should be disregarded by this court, citing *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008) (mere conclusory assertions regarding claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice)

We have reviewed the plaintiff's principal and reply briefs with the defendant's assertions in mind. The plaintiff has not completely disregarded the applicable rules of appellate procedure. In some instances, we find that the plaintiff has provided a citation to the record or to an exhibit. Although at times the portion of the record to which she cites does not seem to support her argument, we cannot fault her attempt to make the arguments that, in her view, are supported by the record. In her reply brief, the plaintiff adequately counters most of the defendant's complaints by clarifying parts of the record where her assertions are supported with adequate citations.

Despite the existence of some deficiencies in the presentation of the appeal, we will review the plaintiff's claims on appeal because we are able, from the trial court record, which consisted of short testimony and only a few exhibits, to discern the evidentiary basis, or lack thereof, for the arguments advanced by both parties.

## II

The plaintiff's first claim is that the trial court erred by entering an order establishing the defendant's child support obligation without making a finding as to his net income. We agree with the defendant that the record in this case directly contradicts the plaintiff's claim that the court did not make a finding as to the defendant's net income.

In ruling on the defendant's motion for order, the court stated: "The court notes that the [guidelines] worksheet indicates a gross income [for the plaintiff] of . . . $3470, and for [the defendant of] $5769. Net incomes [for the plaintiff] of $2344, and for [the defendant] of $3652. The court notes that the [guidelines indicate] a presumptive current support amount of $185 for [the plaintiff] and $288 for [the defendant]. Having considered the exhibits, the testimony of the parties, having reviewed the motion and supporting documentation, the court grants the defendant's motion for order concerning child support postjudgment and orders child support in the amount of $288 per week."

Unlike in *Tuckman* v. *Tuckman*, 308 Conn. 194, 208, 61 A.3d 449 (2013), upon which the plaintiff relies,[4] the basis for the child support order in this case is readily ascertainable and can be verified by noting that the combined net weekly incomes, as indicated on the guidelines worksheet, to which the court referred, exceeded $4000 per week, and that $185 and $288 were the presumptive proportional minimal amounts required of each party by the guidelines. Given that the parties' combined net weekly base salaries were in excess of $4000, the court had the discretion to order, as a minimum, the presumptive child support amount for a combined net weekly income of $4000, which

is the highest weekly amount listed on the guidelines schedule.[5] See Regs., Conn. State Agencies § 46b-215a-2c (a) (2).

Even if the phraseology used by the court in "noting" the parties' gross and net incomes cannot semantically be treated as factual findings, as the plaintiff argues, a court's decision on a support order can stand even if it lacks specific findings as to gross and net incomes. A trial court is "not required to make explicit findings as to net income." *Valentine* v. *Valentine*, supra, 164 Conn. App. 369; see also *Hughes* v. *Hughes*, 95 Conn. App. 200, 207–208, 895 A.2d 274, cert. denied, 280 Conn. 902, 907 A.2d 90 (2006).

"[A] court must base its child support and alimony orders on the available net income of the parties . . . . Whether . . . an order falls within this prescription must be analyzed on a case-by-case basis. Thus, while our decisional law in this regard consistently affirms the basic tenet that support and alimony orders must be based on net income, the proper application of this principle is context specific. . . . [T]he trial court is not required to make specific reference to the criteria that it considered in making its decision." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Szynkowicz* v. *Szynkowicz*, 140 Conn. App. 525, 530–31, 59 A.3d 1194 (2013).

In the present case, facially, the court had before it the parties' financial affidavits and other evidence as to their net incomes, and it specifically indicated that it had taken all of the evidence presented into account in fashioning its modified order of child support, which it stated was the presumptive amount required by the guidelines. It is sufficient that the court, referencing the guidelines worksheet, actually stated the amounts of gross and net incomes that justified its determination of a modified child support order. Affording the court every reasonable presumption in favor of the correctness of its decision, and absent any indication to the contrary, we assume that the court considered the appropriate evidentiary underpinnings in fashioning its order. See *Hughes* v. *Hughes*, supra, 95 Conn. App. 208; see also *Young* v. *Commissioner of Correction*, 104 Conn. App. 188, 190 n.1, 932 A.2d 467 (2007) (when decision lacks specificity, this court presumes trial court made necessary findings if we are able to infer facts on which court's decision appears to have been predicated), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008).

### III

The plaintiff's next claim is that the trial court erred by making findings as to the parties' gross and net incomes based on an unsworn guidelines worksheet prepared by a family relations officer where the information on the guidelines worksheet was contrary to the

gross and net incomes set forth in the parties' financial affidavits or testified to by the parties. As part of this claim, the plaintiff also argues that the court should not have considered the guidelines worksheet without its first being submitted into evidence. The defendant argues that this claim was not properly preserved, but if this court decides to review it, the court properly referred to the net incomes reflected on the guidelines worksheet because the information it contained was supported by the evidence presented during the hearing on the defendant's motion for order.[6] We agree with the defendant that the plaintiff did not properly preserve either part of this claim.

"It is well settled that a trial court can be expected to rule only on those matters that are put before it. . . . [A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Citations omitted; internal quotation marks omitted.) *Ucci* v. *Ucci*, 114 Conn. App. 256, 261–62, 969 A.2d 217 (2009).[7] In addition, Practice Book § 60-5 provides in relevant part that this court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial . . . ."

The plaintiff first argues that because the guidelines worksheet was not entered into evidence, the court was not permitted to rely on it when determining its order as to child support. During the hearings on the defendant's motion for order and on her motion to reargue, however, the plaintiff never objected to the submission of the guidelines worksheet to the trial court or to the court's consideration of it because it had not been marked as an exhibit. The plaintiff's motion to reargue also makes no reference to the guidelines worksheet; rather, her allegations assert that the defendant's financial affidavit was "incomplete and failed to properly declare his income as that term is defined in the [guidelines]."

As to the plaintiff's claim that the guidelines worksheet contained information that was unsupported by the evidence, during the hearing on the plaintiff's motion to reargue, her counsel argued that he had "no reason to doubt that [f]amily [r]elations put together a [guidelines worksheet] because they based it on [the defendant's] financial affidavit," an admission that the information contained in the guidelines worksheet to which the plaintiff is now objecting was indeed in evidence. This admission is diametrically opposed to the plaintiff's claim on appeal that the information on the guidelines worksheet was contrary to the gross and net incomes set forth in the parties' financial affidavits or testified to by the parties.

As the plaintiff is objecting to the court's consideration of the guidelines worksheet for the first time on appeal, we decline to review this claim.

IV

The plaintiff's final claim is that the trial court erred by failing to take into account the defendant's income in excess of his base salary when it determined his child support obligation. The defendant counters that the court entered its order of child support after considering both parties' incomes, including income in excess of their respective base salaries, and that ultimately, the court did not abuse its discretion in determining that a supplemental child support order based on the parties' income of indeterminate amounts was not appropriate in this particular case. We agree with the defendant. We address this claim in two parts as it relates to both the court's initial ruling on the defendant's motion for order and its ruling on the plaintiff's motion to reargue, from which the plaintiff also appeals.

A

We first address the plaintiff's challenge to the court's decision on the defendant's motion for order. During the hearing on the defendant's motion, the parties' financial affidavits were entered as exhibits. The plaintiff's financial affidavit reflected a gross base salary from her employment at GE Capital of $13,878 per month, or $166,536 per year. During the cross-examination of the plaintiff, however, it was revealed that her gross weekly base salary was $3470, for a total gross annual base salary of $180,440. In addition to her base salary, she earned a gross bonus of $2114 per month, or $25,368 per year. She testified that she is paid a bonus once per year.

The defendant's financial affidavit showed his gross base salary from his employment at Morgan Stanley as being $25,000 per month, or $300,000 per year. The defendant testified that he also received deferred compensation in the form of stock in addition to his base salary. Attached as schedules to his financial affidavit were summaries from Morgan Stanley listing in detail his interest in unvested Morgan Stanley stock units and the "Morgan Stanley Investment Management Plan," as well as the vesting and distribution schedules for both. The defendant testified that the deferred compensation he receives from these interests is not guaranteed and that, if his department or he did something wrong, the money could be taken back. Additionally, he testified that even after some of the awards vest, they are not immediately distributed to the defendant in full but, rather, distributed at a much later date, sometimes years after vesting. The defendant pointed out that, with respect to his 2014 W-2 form, the amount reflected as deferred compensation income had vested but had not been distributed and that he had included all of his

cash compensation on his financial affidavit.

There is no indication in the record that the court did not consider the evidence of the plaintiff's bonus income from GE Capital and of the defendant's deferred compensation from Morgan Stanley. The former was presented as evidence during the plaintiff's testimony and through defendant's exhibit B, although she omitted any mention of her bonus income in her financial affidavit. The defendant testified as to the nature of his deferred compensation plan and his receipt of awards of stock from his employer, and also attached documentation describing his past receipt of such compensation to his financial affidavit as a separate schedule. The gist of the plaintiff's claim is that the court should have based its child support order on more than the defendant's net base income from his base salary. On appeal, the plaintiff argues that the court's order is not in compliance with the guidelines. She asserts that the court was *required* either to issue a supplemental child support order based on a percentage of the defendant's deferred compensation income, which is what the plaintiff requested during the hearing on the defendant's motion for order,[8] or that the court should have included the amount of the defendant's deferred compensation income in determining his net weekly income for purposes of establishing his weekly child support obligation.

During the hearing on the defendant's motion for order, the plaintiff submitted into evidence her own child support calculations. In making these calculations, she did not use the defendant's income as stated on his financial affidavit but, rather, included all the income reported on his 2014 W-2 form, and ascribed to the defendant a weekly income of $7434.[9] She also calculated her own income based on her admittedly understated weekly base income as reflected on her financial affidavit. The plaintiff, however, clearly indicated to the court that the income from the defendant's deferred compensation was not a part of her calculation that resulted in her request for her purported maximum presumptive amount of $895 per week in child support. Rather, she requested that the court consider entering a supplemental order based on a percentage of his deferred compensation income, which she admitted consisted of future unknown amounts. In seeking the $895 per week order, the plaintiff requested that the court order the maximum presumptive amount of child support based on the parties' proportional shares of 12.04 percent of what she claimed was their combined net weekly income of $9674.[10] In light of the circumstances of the present case, in which the parties' combined net weekly income was in excess of $4000, the court's child support order of the presumptive minimum child support amount pursuant to the guidelines was legally proper.

It has long been established that the guidelines, as promulgated by a commission empowered pursuant to legislation enacted in 1989; see Public Acts 1989, No. 89-203; were intended to "substantially [circumscribe] the traditionally broad judicial discretion of the court in matters of child support." *Favrow* v. *Vargas*, 222 Conn 699, 715, 610 A.2d 1267 (1992). "[T]he . . . guidelines shall be considered in *all* determinations of child support amounts within the state and . . . the guidelines consist of the Schedule of Basic Child Support Obligations as well as *the principles and procedures* set forth [therein]." (Emphasis in original; internal quotation marks omitted.) *Maturo* v. *Maturo*, 296 Conn. 80, 118, 995 A.2d 1 (2010).

The guidelines that became effective on July 1, 2015, were in effect at the time the court conducted its hearing on the defendant's motion for order. The 2015 guidelines codified developments in recent cases decided by the Supreme Court and this court regarding the consideration of child support order amounts whenever the parties' combined net weekly income exceeds $4000. Child Support and Arrearage Guidelines (2015), preamble, § (e) (5), p. ix.

In *Maturo*, our Supreme Court noted that "[t]he effect of unrestrained child support awards in high income cases is a potential windfall that transfers *wealth* from one spouse to another or from one spouse to the children under the guise of child support." (Emphasis in original.) *Maturo* v. *Maturo*, supra, 296 Conn. 105. The court emphasized that "all child support awards must be made in accordance with the principles established [in the guidelines and any applicable statutes] to ensure that such awards promote equity, uniformity and consistency for children at all income levels. . . . [All child support awards] should follow the principle expressly acknowledged in the preamble [of the guidelines] and reflected in the schedule that the child support obligation as a percentage of combined net weekly income should decline as the income level rises." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 94–95. In *Maturo*, the court faulted the dissolution court's open-ended allocation of 20 percent of the defendant's net bonus income for child support because it was inconsistent with the schedule contained in the guidelines and it violated the principle that a decreased percentage of the parties' combined net weekly income should be awarded as the parties' income level rises. Id., 97.

Consistent with *Maturo* and the guidelines schedule, absent a proper deviation, the trial court could not order the parties, who had a combined net weekly income of more than $4000 and one minor child, to pay less than the presumptive amount set forth in the child support guidelines, i.e., $482,[11] or more than 12.04 percent of their combined net weekly income. See Regs., Conn.

State Agencies § 46b-215a-2b (f). In addition, in *Maturo*, the court determined it was error for the dissolution court to fail to provide "any explicit justification for the award of bonus income that was related to the financial or nonfinancial needs or characteristics of the children under . . . § 46b-84 (d).[12] . . . In fact, there is no evidence that the court considered *anything* other than the defendant's income and earning capacity in making the child support award. Thus, absent a finding as to how the additional funds would be used for the benefit of the children and how the award was related to the factors identified in § 46b-84 (d), we conclude that the court exceeded its legitimate discretion." (Emphasis in original; footnotes added.) *Maturo* v. *Maturo*, supra, 296 Conn. 103.

Subsequent to *Maturo*, in *Dowling* v. *Szymczak*, 309 Conn. 390, 400–402, 72 A.3d 1 (2013), the Supreme Court provided further guidance for determining child support obligations in high asset, high income familial situations. Our Supreme Court explained: "[T]he schedule [in the guidelines] sets forth a presumptive percentage and resultant amount corresponding to specific levels of combined net weekly income; the schedule begins at $50 and continues in progressively higher $10 increments, terminating at $4000. . . . This court has recognized that the guidelines nonetheless apply to combined net weekly income in excess of that maximum amount. . . . Indeed, the regulations direct that, [w]hen the parents' combined net weekly income exceeds $4,000, child support awards shall be determined on a case-by-case basis, and the current support prescribed at the $4,000 net weekly income shall be the minimum presumptive amount. . . .

"Either the presumptive ceiling of income percentage or presumptive floor of dollar amount on any given child support obligation, however, may be rebutted by application of the deviation criteria enumerated in the guidelines and by the statutory factors set forth in § 46b-84 (d). . . . In order to justify deviation from this range, the court must first make a finding on the record as to why the guidelines were inequitable or inappropriate . . . . Thus, this court unambiguously has stated that, when a family's combined net weekly income exceeds $4000, the court should treat the percentage set forth in the schedule at the highest income level as the presumptive ceiling on the child support obligation, subject to rebuttal by application of the deviation criteria enumerated in the guidelines, as well as the statutory factors described in § 46b-84 (d). . . . In other words, as long as the child support award is derived from a total support obligation within this range—between the presumptive minimum dollar amount and the presumptive maximum percentage of net income—a finding in support of a deviation is not necessary." (Citations omitted; emphasis omitted; internal quotation marks omitted.)

In *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 363, 999 A.2d 721 (2010), the defendant appealed from a trial court's judgment that required him to pay 20 percent of his annual net cash bonus as additional child support on top of a $477 weekly order based on the parties' combined net weekly income. The Supreme Court reversed the judgment after concluding that the trial court did not base this supplemental child support order on the needs of the children and, in addition, improperly deviated from the guidelines, as "any deviation from the schedule or the principles on which the guidelines are based must be accompanied by the court's explanation as to why the guidelines are inequitable or inappropriate and why the deviation is necessary to meet the needs of the child." (Internal quotation marks omitted.) Id., 368.

In the present case, the court found that the parties' combined net weekly income from their respective base salaries was $6000, well in excess of $4000 per week, the highest combined income level promulgated in the schedule. Pursuant to the applicable guidelines codified subsequent to *Maturo* and its progeny, the court could "exercise [its] discretion consistent with the income scope as set forth in [§] 46b-215c (a) (2) [of the Regulations of Connecticut State Agencies] on a case by case basis where the combined income exceeds the range of the schedule. When the combined net weekly income exceeds $4,000, the presumptive support amount shall range from the dollar amount at the $4,000 level to the percentage amount at that level applied to the combined net weekly income consistent with statutory criteria, including . . . § 46b-84 (d) . . . . In exercising discretion in any given case, the . . . trial judge should consider evidence submitted by the parties regarding actual past and projected child support expenditures to determine the appropriate order." Child Support and Arrearage Guidelines (2015), preamble, § (e) (5), p. ix.

It was therefore an appropriate exercise of the trial court's discretion to adhere to the guidelines schedule and to order the presumptive minimum child support amount of $288 per week in the present case. The plaintiff presented limited evidence to the court that would have justified a higher amount. It was her burden to prove that the presumptive minimum child support amount would be inappropriate or inequitable and that an application of the deviation criteria in the guidelines and the statutory criteria contained in § 46b-84 (d) was necessary. In fact, during the hearing on the defendant's motion for order, the plaintiff never argued that any deviation from the guidelines was justified, nor did she refer to the criteria in § 46b-84 (d). She simply demanded, without any real justification, that the court order both the maximum presumptive amount under the guidelines, as well as a supplemental order based on the defendant's deferred compensation income. Other

than the expenses listed on her financial affidavit, the veracity of which had been called into question, she presented no other evidence or any testimony regarding the "age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs" of the parties' minor child; General Statutes § 46b-84 (d); upon which the trial court could base an order deviating from the guidelines or a supplemental child support order based on income derived from the defendant's deferred compensation plan. The plaintiff did not argue that the child's needs dictated a child support order higher than the presumptive minimum amount. Rather, her arguments focused exclusively on what she asserted was the defendant's cash income from the prior year and his receipt of indeterminate deferred compensation. Her request for a child support order of $895 per week, or $3878 per month, was in excess of the base unallocated alimony and child support amount she had been receiving pursuant to the dissolution judgment, suggesting that she was essentially seeking a continuation of alimony disguised as child support. "[S]upport award[s] may not be used to disguise alimony award[s] to the custodial parent." (Internal quotation marks omitted.) *Maturo* v. *Maturo*, supra, 296 Conn. 105–106.; see also *Brown* v. *Brown*, 190 Conn. 345, 349, 460 A.2d 1287 (1983).

We therefore are not persuaded that the court abused its discretion in ordering $288 per week as child support given the high incomes of both parties, the lack of any evidence as to any specialized or particular financial needs of the child, and the fact that other unmodified portions of the dissolution decree address payment for the many typical additional expenses for a child that are likely to arise—daycare, the child's health needs, the cost of his extracurricular activities, including summer camp, and his potential need for future assistance with college expenditures.

For the same reasons, we conclude that the court acted within its discretion in determining that a supplemental child support order regarding the parties' income of indeterminate amounts was not appropriate or necessary in this particular case. The guidelines provide that child support shall be determined as follows:

"(1) Order requirements

"(A) Specific dollar amount

"The current support order shall include a specific dollar amount of support as a primary element, to be paid on a recurring basis.

"(B) Indeterminate amounts

"The primary requirement of a specific dollar amount of current support shall not preclude the entry of a supplemental order, in appropriate cases, to pay a percentage of a future lump sum payment, such as a bonus,

Such supplemental orders shall be entered when a specific dollar amount of the future lump sum payment has not been ordered and such payment is of an indeterminate amount, subject to clauses (i) and (ii) in this subparagraph:

"(i) for combined net weekly incomes not more than $4,000, the percentage shall be generally consistent with the schedule in subsection (e) of this section;

"(ii) for combined net weekly incomes over $4,000, the order shall be determined on a case by case basis consistent with applicable statutes." Regs. Conn. State Agencies § 46b-215a-2c (c) (1); see also Child Support and Arrearage Guidelines (2015), preamble, § (g) (7).

The court's child support order tracks the language in § 46b-215a-2c (c) (1) of the Regulations of Connecticut State Agencies. The specific dollar amount ordered to be paid by the defendant as child support was $288 per week, which was calculated using the parties' combined net weekly determinate income, i.e., their base salaries. Because the parties' combined net weekly income exceeded $4000 using their base salary income alone, it was within the court's discretion not to make any supplemental order with respect to income of indeterminate amount, as such orders in cases in which the net weekly income exceeds $4000 are to be determined on a case-by-case basis. See Regs. Conn. State Agencies § 46b-215a-2c (c) (1) (B) (ii).

The preamble to the guidelines, referring to "supplemental orders," provides in relevant part as follows: "[S]ometimes when a support order is being set the parties have knowledge of anticipated future payments of an unknown amount, such as a bonus or other incentive based compensation such as stock options, restricted stock, or other stock rights if, and, or when vested or exercisable. While the expected amounts may be substantial, the indeterminate nature of such amounts precludes their inclusion in the gross income of the parent expected to receive them at the time the order enters.[13] In such cases . . . the most practical way of considering such amounts for purposes of establishing an appropriate amount of support is to treat the amounts separately from the basic current support order, which is to be paid periodically. . . . [W]hen the order is entered, the parties agree or the court orders [that] a percentage of the future amounts shall be obligated as support upon either the receipt of the payment (such as in the event of a bonus), or upon vesting (such as restricted stock or stock options). This approach maintains the integrity of the current support calculation method, since it does not attempt to include indeterminate or speculative amounts in a parent's gross income. It also saves the parties from returning to court to modify the support order to account for receipt of the payment. . . . [F]or combined net weekly incomes over $4,000, [supplemental] order[s] shall be deter-

mined on a case by case basis consistent with the determination of the child support order . . . ." (Footnote added.) Child Support and Arrearage Guidelines (2015), preamble, § (g) (7), p. xv.

It appears from the record that, during the hearing on the defendant's motion for order, the self-represented plaintiff understood that the defendant's deferred compensation would be awarded in future indeterminate amounts, but because she claimed she could determine the amount of such awards on the defendant's 2014 W-2 form, she lumped what he testified was additional vested but undistributed deferred compensation into her calculation of his gross and net weekly income, and asked for the maximum presumptive amount pursuant to the guidelines based on that purported income. At a later point in the hearing, however, she asked the court to consider a supplemental order based on a percentage of the defendant's future bonus or deferred compensation payments of unknown amount.

The plaintiff argues that the court did not consider the parties' income of indeterminate amounts in making its orders, which is not the case. The court had before it evidence of the plaintiff's bonus income, as well as evidence that future deferred compensation paid to the defendant in indeterminate amounts could be subject to "claw back," and that it was, at times, distributed years after being awarded. There is no indication in the record that the trial court did not consider the defendant's receipt of deferred compensation, as it specifically noted during the hearings on the defendant's motion for order and the motion to reargue that it had considered all of the evidence and testimony, including the parties' financial affidavits.

The plaintiff also argues that the parties' indeterminate income should have been included in the court's determination of the parties' gross and combined net weekly income when it calculated the weekly support order. This argument is contrary to *Maturo* and its progeny, and the guidelines' regulations conforming to the legal principles established therein.[14] As described previously, in the preamble to the guidelines, "the indeterminate nature of such amounts [of bonus or other incentive based compensation] precludes their inclusion in the gross income of the parent expected to receive them at the time the order enters." Child Support and Arrearage Guidelines (2015), preamble, § (g) (7), p. xv. The ability of a trial court to make supplemental orders is meant to address specifically the variability and speculative nature of income of indeterminate amounts and "saves the parties from returning to court to modify the support order to account for receipt of the payment." Id.

Even if the court had been provided with sufficient evidence to assign a periodically determined, predictable amount to the defendant's bonus income, it would

not be required to be included in the calculation of his gross and net weekly income, but, rather, it would be awarded as a fixed percentage of the routine, consistent annual bonus income in the nature of a supplemental order. Moreover, because the parties' combined net weekly base salaries were already in excess of $4000 per week, the court still had the discretion to order only the presumptive minimum child support amount and to decline to enter any supplemental order, which the plaintiff conceded during the hearing on her motion to reargue.

As we have discussed previously in this part of the opinion, there was little evidence presented by the plaintiff to justify the necessity for an award higher than the presumptive minimum amount required under the guidelines.[15] Accordingly, we conclude that the trial court did not abuse its discretion in determining its child support order, which was in compliance with the guidelines.

B

Finally, we address the plaintiff's claim that the trial court erred in denying her the relief that she sought in connection with her motion to reargue. After the court granted the plaintiff's motion to reargue, it held a hearing and declined to afford the plaintiff the relief she was requesting. When a trial court grants a motion to reargue and merely reaffirms the underlying judgment, as is the present case, its original decision stands. See *Nelson* v. *Dettmer*, 305 Conn. 654, 676, 46 A.3d 916 (2012). In refusing to grant the plaintiff any relief, the court reiterated that it had considered all of the evidence presented during the hearing on the defendant's motion for order, as well as the child support guidelines and the statutory factors set forth in General Statutes §§ 46b-82, 46b-86 and 46b-215, and that it could see no reason to disturb its earlier ruling. We are not persuaded that the court's ruling reflects an abuse of discretion.

"The granting of a motion for reconsideration and reargument is within the sound discretion of the court. The standard of review regarding challenges to a court's ruling on a motion for reconsideration is abuse of discretion. As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did." (Internal quotation marks omitted.) *Shore* v. *Haverson Architecture & Design, P.C.*, 92 Conn. App. 469, 479, 886 A.2d 837 (2012).

"The purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It may also be used to address . . . claims of law that the [movant] claimed were not addressed by the court." (Internal quotation

marks omitted.) *Pressley* v. *Johnson*, 173 Conn. App. 402, 407, 162 A.3d 751 (2017).

"A motion to reargue is not a device to obtain a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 101 n.39, 919 A.2d 1002 (2007). A motion to reargue may also be appropriate where there is newly discovered evidence, that is, evidence that could not have been discovered earlier by the exercise of due diligence. *Durkin Village Plainville, LLC* v. *Cunningham*, 97 Conn. App. 640, 656, 905 A.2d 1256 (2006).

During the hearing on the motion to reargue, the plaintiff attempted to interject, by way of argument only, additional information and explanation concerning the nature of the defendant's deferred compensation and also claimed, without any proof, that the defendant may have been receiving some other form of additional cash bonus. The plaintiff's primary concern was that the court had misapprehended the facts relative to the total amount of the defendant's income. Counsel for the plaintiff stated: "My review of the orders of the court are that they are not in accordance with the . . . guidelines. . . . [The plaintiff] did, in fact, seek to point [that] out to the court . . . but perhaps in a different way than I would do at the present time."[16] Essentially, counsel was arguing that the facts surrounding the defendant's income were not clearly presented to the court during the hearing on the defendant's motion for order. This was an improper use of a motion to reargue, and the court did not abuse its discretion in declining to grant the plaintiff any relief, as the information the plaintiff was relaying to the court did not consist of any prior evidence that the court had misapprehended or that could not have been earlier discovered and presented during the previous hearing on the defendant's motion. The plaintiff also did not request that the court consider any overlooked legal authority or claim. The plaintiff essentially argued, without any additional proof, that the defendant had misrepresented the extent of his income.[17] We conclude that the court applied the well-known standard on motions to reargue in making its decision and did not abuse its discretion in denying the relief sought in the motion to reargue. See, e.g., *Light* v. *Grimes*, 156 Conn. App. 53, 69–70, 111 A.3d 551 (2015) (holding that abuse of discretion was not demonstrated by trial court's refusal to provide relief in connection with motion for reargument).

We further conclude that even if the arguments made by counsel for the plaintiff to the court during reargument had been proper, they would have made little difference in an appropriate analysis of the defendant's child support obligation. The arguments did not establish any predictable certainty as to the future amounts

of the defendant's deferred compensation. Counsel for the plaintiff admitted that the value of the defendant's restricted shares of stock "depends on the value of the stock on the day . . . that the restrictions lapse." Essentially, the plaintiff, in reargument, told the court that the defendant made too much money to be ordered to pay only the presumptive minimum child support amount of $288, but other than focusing on the amount of the defendant's income, the plaintiff, following an approach disapproved by the Supreme Court in *Maturo*, failed to establish any misapprehended deviation or § 46b-84 (d) criteria that would justify a ruling that the needs of the parties' minor child required the entry of either a higher weekly amount within the range between the minimum and the maximum presumptive amounts, a deviation from the guidelines to a higher weekly amount, or a supplemental order based on the defendant's bonus income.

We therefore conclude that the court properly exercised its discretion in ordering the defendant to pay child support based on the presumptive minimum amount for a family whose combined net weekly income exceeds $4000. The presumptive amount of $288 was not rebutted adequately by the plaintiff with proof that a higher amount in compliance with the guidelines was necessary, or that an application of the deviation criteria enumerated in the guidelines, as well as the statutory factors described in § 46b-84 (d), appropriately and equitably justified a higher amount of child support.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] This figure was derived as follows, as reflected on the guidelines worksheet: The basic child support obligation from the schedule of basic child support obligations for families with combined net weekly incomes of $4000 or higher is $473. The plaintiff's share of this amount, based on the percentage of the parties' combined net weekly incomes that her net weekly income comprises, 39.07 percent, was $185. The defendant's share of the $473 basic child support obligation was 60.93 percent, or $288. If the court had decided to award the maximum presumptive amount of child support, the court would have multiplied the recommended percentage on the schedule of basic child support obligations, 12.04 percent, by the parties' combined net weekly incomes and ordered the defendant to pay 60.93 percent of that amount, or $440.

[2] On March 16, 2016, the plaintiff filed a motion for articulation, which the court denied on July 8, 2016. On August 25, 2016, the plaintiff filed a motion for review. On October 7, 2016, this court granted the motion for review but denied the relief requested therein.

[3] Review would be plenary if this appeal raised a question of whether, and to what extent, the guidelines apply. See *Unkelbach* v. *McNary*, 244 Conn. 350, 357, 710 A.2d 717 (1998) (interpretation of statutory scheme that governs child support determinations in Connecticut constitutes question of law).

[4] In *Tuckman*, our Supreme Court concluded that the trial court had abused its discretion in awarding an amount of child support without determining the net income of the parties, mentioning or applying the guidelines, or making a specific finding on the record as to why it was deviating from the guidelines as required by the child support statutes, regulations and guidelines. *Tuckman* v. *Tuckman*, supra, 308 Conn. 208. The combined effect of these omissions on the part of the trial court left open to speculation whether it acknowledged the guidelines but deviated from them without

making findings on the record as to how application of the guidelines would be inequitable or inappropriate, or, in the alternative, disregarded the guidelines entirely. Id., 203.

[5] Whether the court abused its discretion in not ordering that the defendant pay a higher amount in child support based on his deferred stock compensation, which he received in addition to his base salary, is the subject of part IV of this opinion.

[6] Practice Book § 25-30, entitled "Statements to Be Filed," provides in relevant part: "(e) Where there is a minor child who requires support, the parties *shall* file a completed [guidelines worksheet] at the time of any court hearing concerning child support . . . ." (Emphasis added.); see *Lusa* v. *Grunberg*, 101 Conn. App. 739, 758–59, 923 A.2d 795 (2007) (trial court can rely on guidelines worksheet not submitted into evidence if figures going into calculations on worksheet substantiated by evidence produced at trial).

[7] The plaintiff does not argue that this court should afford any type of extraordinary review to the present claim.

[8] We note that the plaintiff was self-represented during the hearing on the defendant's motion for order, and represented by counsel during the hearing on her motion to reargue.

[9] It is on the basis of this 2014 W-2 form that the plaintiff apparently justifies her claim that the defendant also may have been receiving other bonus income besides his deferred compensation at the time of the hearing on the defendant's motion for order. The defendant, however, never testified that he received any bonus income other than the deferred compensation listed on the schedule attached to his financial affidavit. Again, the defendant testified that he did not report all of the income noted on his W-2 form as income on his financial affidavit because, although deferred compensation benefits had vested and the vesting amounts been reported as income on the W-2 form, they had not been distributed to him as cash compensation.

[10] The court noted that the plaintiff was seeking more in child support than she had been awarded as unallocated alimony and child support by the dissolution court in 2008.

[11] Although the plaintiff noted during the hearing on the motion to reargue that the court incorrectly found the presumptive amount to be $473, not $482, she has not requested reversal on this ground.

[12] General Statutes § 46b-84 (d) provides: "In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child."

[13] In *Maturo* v. *Maturo*, supra, 296 Conn. 106, our Supreme Court distinguished between two types of bonus income, stating: "[W]hen there is a proven, routine consistency in annual bonus income, as when a bonus is based on an established percentage of a party's steady income, an additional award of child support that represents a percentage of the net cash bonus also may be appropriate if justified by the needs of the child. When there is a history of wildly fluctuating bonuses, however, or a reasonable expectation that future bonuses will vary substantially . . . an award based on a fixed percentage of the net cash bonus is impermissible *unless* it can be linked to the child's characteristics and demonstrated needs." (Emphasis in original.)

[14] The plaintiff also claims that the defendant's deferred compensation, which already had been distributed in 2015, should have been considered by the court. Any deferred compensation income distributed to the defendant prior to August 31, 2015, however, already was subject to being paid to the plaintiff as unallocated alimony and child support pursuant to the judgment of dissolution. The court was within its discretion not to order child support based on the receipt of those past amounts prior to the date of the court's order, as ordering child support based on those amounts would inequitably have permitted the plaintiff to double dip by requiring the defendant to pay support twice based on the same income.

[15] In determining whether to supplement the basic child support obligation with bonus income, the court also must consider the property division and custody schedule, as well as any additional support obligations imposed on the noncustodial parent for education, health care, recreation, insurance, daycare, and other matters. In the present case, the dissolution court entered separate orders requiring the defendant to pay one half of the child's medical,

health related and daycare expenses, as well as one half of his extracurricular activities, which "presumably would cover many of the luxuries to which children of affluent families are accustomed and would expect to be maintained following a divorce. When not covered by separate orders, however, such expenses are not infinite, and thus are not likely to represent a uniform percentage of a defendant's variable bonus income, regardless of the income level in any given year." *Maturo* v. *Maturo*, supra, 296 Conn. 107.

[16] The plaintiff's argument here appears to suggest that because she represented herself during the hearing on the defendant's motion for order and, in connection with the motion to reargue, was represented by counsel, the court should afford her an opportunity to permit counsel to revisit matters decided during the hearing. There is no basis in law for this use of the motion to reargue, which, for obvious reasons, would have prejudiced the defendant. "This court has always been solicitous of the rights of pro se litigants and, like the trial court, will endeavor to see that such a litigant shall have the opportunity to have his case fully and fairly heard *so far as such latitude is consistent with the just rights of any adverse party.* . . . Although we will not entirely disregard our rules of practice, we do give great latitude to pro se litigants in order that justice may both be done and be seen to be done. . . . For justice to be done, however, *any latitude given to pro se litigants cannot interfere with the rights of other parties, nor can we disregard completely our rules of practice.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Wasilewski* v. *Machuga*, 92 Conn. App. 341, 342, 885 A.2d 216 (2005).

[17] In fact, counsel for the plaintiff properly stated that a more appropriate motion, in the case of fraud being perpetrated on the court by the defendant, would have been a motion to open the judgment, so that the plaintiff could "present to the court . . . a[n] appropriate and full and comprehensive analysis and display of [the defendant's] income . . . ."

--------------------------------